UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-22713-CIV-SEITZ/SIMONTON

ALEIXO ESTIBEIRO,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DENYING PLAINTIFF'S MOTION TO REMAND

THIS MATTER came before the Court upon Defendant's Motion to Compel Arbitration [DE 3] and Plaintiff's Motion to Remand. [DE 10]. Plaintiff Aleixo Estibeiro, an Indian seaman, has sued Carnival Corporation for damage to his heart muscle sustained as a result of an alleged failure to administer medication in a timely manner after Plaintiff suffered a heart attack while working on Carnival's cruise ship. Carnival seeks to compel arbitration of Plaintiff's claims in Bermuda under Bermuda law pursuant to an arbitration clause contained in Plaintiff's Terms and Conditions of Employment.

Upon review, the Court will grant Carnival's Motion to Compel Arbitration and deny Plaintiff's Motion to Remand. Plaintiff's defense that the arbitration clause is void as against public policy is not available at the arbitration enforcement stage, but instead must be asserted after Plaintiff has obtained an arbitral award. Moreover, even if Plaintiff could assert the defense now, at the enforcement stage, he has failed to make a showing that his remedies under Bermuda law are inadequate. Further, Plaintiff's defense that the arbitration clause is unconscionable is not a recognized defense so as to render the agreement to arbitrate null and void.

1

## I. BACKGROUND

While working on a cruise ship, the M/V Ventura, Plaintiff experienced chest pain around 3:00 a.m. on June 1, 2011 and went to the clinic onboard the ship. [DE 1-5 at ¶ 13]. Twenty minutes after arriving at the clinic, an electrocardiogram showed that Plaintiff was suffering from a heart attack. [*Id.* at ¶ 14]. At 4:04 a.m., Plaintiff's lab results revealed abnormal cardiac MB bands. [*Id.* at ¶ 15]. At 6:35 a.m., doctors onboard the ship administered an infusion of Metalyse. [*Id.* at ¶ 16]. Plaintiff contends that the three and a half hour delay between when he arrived at the clinic and when doctors administered Metalyse resulted in serious and permanent damage to Plaintiff's heart muscle such that he now needs a heart transplant. [*Id.* at ¶¶ 17, 20].

During the relevant time period, Plaintiff's employment was governed by the Principal Terms of Employment & Code of Conduct ("Principal Terms of Employment"), which Plaintiff acknowledged he received, reviewed, and accepted by signing the Acceptance of Employment Terms and Conditions.[1] [DE 3-1, DE 3-2]. The Principal Terms of Employment contain a compulsory arbitration clause that provides that any and all disputes related to the seaman's employment shall be referred to and resolved by arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention").[2] The arbitration clause further states that arbitration must be held in

---

[1] The Principal Terms of Employment were issued by Fleet Maritime Services International Ltd. ("FMSI"), who is Plaintiff's employer. [DE 3-1, DE 3-2]. However, the ship Plaintiff worked aboard is owned by Carnival PLC. [DE 13 at fn. 1]. Carnival PLC is a British corporation headquartered in England, whereas Defendant Carnival Corporation is a Panamanian corporation headquartered in Miami, Florida. [*Id.*]. For the purposes of the motions pending before the Court, the legal relationships between FMSI, Carnival PLC, and Carnival Corporation are irrelevant because the arbitration clause in the Principal Terms of Employment provides that it applies to disputes between crew members and all Carnival Group brands. [DE 3-2 at 8].

[2] The Convention is a treaty that requires courts of a nation to give effect to private agreements to arbitrate and to enforce arbitration awards made in other contracting states. *See Lindo v. (Bahamas) Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011).

Bermuda unless the Bermuda venue provision is found legally unenforceable. [Id.]. Then, the arbitration must be held in London, England. The Principal Terms of Employment also provide that the laws of Bermuda apply to the arbitration. [DE 3-1 at 10]. The "Acceptance of Employment Terms and Conditions" ("Acceptance") form that Plaintiff signed provides that the Principal Terms of Employment are incorporated by reference into the Acceptance and that the parties "agree that any and all disputes shall be referred to and resolved by arbitration" as set forth in the Principal Terms of Employment. [DE 3-2].

As a result of his injuries aboard the M/V Ventura, Plaintiff sued Carnival Corporation in state court and asserted claims for Jones Act negligence (Count I), maintenance and cure (Count II), failure to treat (Count III), and medical negligence (Count IV). NCL removed the case to this Court pursuant to 9 U.S.C. § 205 on the ground that the arbitration clause in the Principal Terms of Employment is governed by the Convention and, as such, this Court has jurisdiction over Plaintiff's claims. [DE 1]. Carnival now seeks to compel arbitration.

## II. DISCUSSION

### A. Legal Standard

There is a strong federal policy favoring the enforcement of arbitration provisions. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce (international arbitration agreements), even assuming that a contrary result would be forthcoming in a domestic context." *Id.* at 629. Under the Convention, this Court engages in a "very limited inquiry'" when deciding motions to compel arbitration. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005). The Court must compel arbitration unless one of the Convention's jurisdictional

prerequisites are not met or one of the Convention's affirmative defenses applies. *See id.* at 1294-1295. The jurisdictional prerequisites are: (1) the agreement to arbitrate is in writing; (2) the agreement provides for arbitration in a territory that is a signatory to the Convention; (3) the agreement arises out of a commercial, legal relationship; and (4) a party to the agreement is not an American citizen or the commercial relationship reasonably relates to a foreign state. *See id.* at 1295 n. 7. The available affirmative defenses are limited to claims that the agreement is "null and void, inoperative, or incapable of being performed." *Id.* at 1301. The agreement is "null and void . . . where it is obtained through . . . fraud, mistake, duress, and waiver . . ." *Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257, 1276 (11th Cir. 2011) (*quoting Bautista*, 396 F.3d at 1302)). As the party opposing arbitration, Plaintiff has the burden to prove that an affirmative defense applies. *See Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 n.3 (11th Cir. 2004); *Four Seasons Hotels and Resorts B.V. v. Consorcio Barr*, 613 F. Supp. 2d 1362, 1367 (S.D. Fla. 2009).

### B. Analysis

The Court must compel arbitration unless one of the four jurisdictional prerequisites are not met or an affirmative defense applies. Here, Plaintiff does not dispute that the jurisdictional prerequisites are satisfied. As such, the Court is vested with jurisdiction to consider whether the agreement to arbitrate is enforceable.[3] To this point, Plaintiff maintains that the arbitration clause is unenforceable as against public policy and is unconscionable.

#### 1. Public Policy Defense

Plaintiff makes two arguments in support of his public policy defense. First, relying on *Thomas*

---

[3] The four jurisdictional prerequisites are satisfied because (1) the agreement to arbitrate is in writing [DE 3-1, DE 3-2]; (2) the agreement provides for arbitration in Bermuda, which is a signatory to the Convention; (3) the agreement arises out of an employment relationship, which is a commercial, legal relationship; and (4) neither party to the agreement is an American citizen.

4

*v. Carnival Cruise Lines*, 573 F.3d 1113 (11th Cir. 2009), Plaintiff maintains that the arbitration clause in the Principal Terms of Employment violates public policy under Article V of the Convention.[4] Plaintiff contends that the Court should follow *Thomas* instead of a more recent opinion by a panel of the Eleventh Circuit, *Lindo*, and find that the arbitration clause null and void as against public policy. Second, Plaintiff avers that an amendment to the Jones Act that deleted the statute's venue provision, renders the Bermuda forum selection clause in the arbitration clause contrary to public policy.

### a. Applicability of *Thomas* and *Lindo*

Upon review, the Court declines to accept Plaintiff's invitation to follow *Thomas* and find that the arbitration clause is unenforceable as against public policy for three reasons. First, *Thomas* is distinguishable from the instant case. Second, *Thomas* is of limited precedential value. Third, Plaintiff has failed to make a showing that his remedies under Bermuda law are inadequate.

First, it is clear that *Thomas* is distinguishable from the instant case. In *Thomas,* 573 F.3d at 1121-22, the Court of Appeals relied in part on the Supreme Court's opinion in *Vimar Seguros y Reaseguros, S.A. v. M/V Sky*, 515 U.S. 528 (1995). In *Vimar*, the high Court stated that in determining whether an arbitration agreement is against public policy, the court must consider whether it "will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the . . . laws has been addressed." *Id.* at 540 (citations omitted). The Court went on to state that:

*Were there no subsequent opportunity for review* and were we persuaded that the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies, we would have little hesitation in condemning the agreement as against public policy.

*Id.* at 540 (*citing Mitsubishi Motors Corp.*, 473 U.S. at 637, n. 19) (emphasis added). Applying *Vimar*,

---

[4]Article V(2) of the Convention provides, "Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that . . .[t]he recognition or enforcement *of the award* would be contrary to the public policy of that country." New York Convention, art. V(2)..

the analysis in *Thomas* revolves around the fact that the only claim subject to arbitration there was a cause of action under the Seaman's Wage Act ("SWA"), a U.S. statute. The Eleventh Circuit held that because the arbitration clause at issue required Thomas to arbitrate his SWA claim in the Philippines under the laws of Panama, he would, in effect, be unable to pursue his claim as it was a cause of action created by U.S. statute that Panamanian law likely would not recognize. As such, Thomas had no assurance that he would obtain subsequent review by a U.S. court as there was a "distinct possibility" that he would not receive an arbitral award under Panamanian law based solely on a U.S. statutory cause of action. *Thomas*, 573 F.3d at 1123-24. Thus, the Court of Appeals found that the choice-of-law and choice-of-forum provisions in the arbitration clause, acting together, were contrary to public policy as they prevented Thomas from obtaining subsequent review of his arbitral award in a U.S. court.

In contrast to *Thomas*, here, Plaintiff has asserted a number of non-statutory, general maritime claims, namely maintenance and cure, failure to treat, and medical negligence, in addition to his U.S. statutory claim for Jones Act negligence. As to the general maritime claims,[5] Plaintiff has not shown a "distinct possibility" that he will not obtain an award and, therefore, be foreclosed from review by U.S. courts. *See Bulgakova v. Carnival Corp.*, 2010 U.S. Dist. LEXIS 39231 (S.D. Fla. February 26, 2010) (finding *Thomas* distinguishable where the plaintiff had not shown a distinct possibility that she would not obtain an arbitral award as to her general maritime claims that would then be subject to review by U.S. courts). As such, because Plaintiff has not established that he has no subsequent opportunity for review of his arbitral award by a U.S. court, Plaintiff's case is distinguishable from *Thomas* and does not come within the ambit of circumstances in which the Court considers a public policy defense at the arbitration enforcement stage as opposed to the award stage. *See Vimar*, 515 U.S. at 540-41.

---

[5]The Court is mindful that *Lindo*, 652 F.3d at 1279, cautions against "speculat[ing] about arbitration outcomes at the initial arbitration-enforcement stage."

6

Moreover, it appears to the Court that *Thomas* is of limited precedential value. Although Plaintiff is correct that *Lindo*, which forecloses a public policy defense at the arbitration enforcement stage,[6] does not overrule *Thomas* as both are panel decisions, at least two subsequent Eleventh Circuit panel decisions have found that *Thomas* violates the prior precedent rule. *See Fernandes v. Carnival Corp.*, 2012 WL 2864491, at *1 (11th Cir. July 12, 2012); *Maxwell v. NCL*, 454 Fed. Appx. 709, 710 (11th Cir. 2011). This is because *Thomas* ignored the holding in *Bautista* limiting the defenses available under Article II of the Convention to fraud, mistake, duress, and waiver.[7] Moreover, in both *Maxwell* and *Fernandes* as well as in *Henriquez v. NCL*, 440 Fed. Appx. 714, 716 (11th Cir. 2011),[8] panels of the Eleventh Circuit followed *Lindo* and rejected the public policy defense at the arbitration enforcement stage.[9] Plaintiff's contention that *Lindo* should be vacated because the mandate issued after the parties settled [DE 8 at 4], is without merit. The fact of the matter is that *Lindo* has not been vacated and this Court is neither empowered, nor inclined, to change that.

Further, even if Plaintiff could assert a public policy defense now, which he cannot, he has not made the requisite showing that his remedies under Bermuda law are so inadequate as to be "fundamentally unfair." *See Lindo*, 652 F. 3d at 1283-84 (holding that public policy defense lacked

---

[6] In *Lindo*, 652 F.3d at 1280-1282, the Eleventh Circuit held that an Article V public policy defense cannot be raised at the initial arbitration enforcement stage because Article V applies only at the arbitral *award*-enforcement stage. The Court opined that even if Lindo could assert an Article V public policy defense at the arbitration-enforcement stage, he failed to demonstrate that his remedies under the laws of the Bahamas, where the arbitration was to take place, would be inadequate so as to render the choice-of-law provision "fundamentally unfair." *Id.* at 1283-1284 (*citing Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1297 (11th Cir. 1998)).

[7] *Thomas* further confused matters by referring to Article V, which, by its terms, applies to recognition and enforcement of the award after arbitration is complete, but using the "null and void" language from Article II. As such, it is unclear whether *Thomas* concerns Article V or Article II of the Convention. *Thomas*, 573 F.3d at 1120, 1124, n. 17.

[8] The Court recognizes that these decisions are unpublished.

[9] However, it is noteworthy that recently a panel of the Eleventh Circuit vacated and withdrew a published opinion addressing *Thomas* and *Lindo*. *Williams v. NCL*, 686 F.3d 1169 (11th Cir. 2012), *vacated and withdrawn by*, 2012 WL 3608537 (11th Cir. Aug. 21, 2012).

merit where the arbitration clause was fundamentally fair and the plaintiff failed to show that his remedies under Bahamian negligence law were inadequate). The Court takes judicial notice of the affidavit of Rod Attride-Stirling, dated May 19, 2009, which was prepared for another case, but filed by Defendant in the record for the instant case. [DE 15-2]. Mr. Attride-Stirling was, at the time he signed the affidavit, a barrister and attorney in Bermuda, a senior partner in a law firm there, and a past president of the Bermuda Bar Association. According to the affidavit, Jones Act claims are not recognized in Bermuda, but Bermuda law allows seafaring employees to recover compensatory damages for loss of earnings and medical expenses that result from personal injuries sustained by an employee as a result of an employer's negligence. [*Id.* at 2]. As such, Plaintiff has remedies under Bermuda law to compensate him for his injuries.

Plaintiff does not dispute the statements in Mr. Attride-Stirling's affidavit. Instead, Plaintiff contends, relying on a 1964 decision from the United Kingdom and a treatise, that "as a general rule, the English courts do not award exemplary or punitive damages in civil cases." [DE 8 at 7-8]. However, Plaintiff has not come forward with legal authority or evidence that *he* cannot recover punitive damages under Bermuda law. Further, even if Plaintiff cannot, in fact, recover punitive damages in Bermuda, this, standing alone, does not render his remedies so inadequate as to constitute fundamental unfairness. As such, Plaintiff has not established that the arbitration clause violates Article V as against public policy.

### b. Jones Act Amendment

Additionally, Plaintiff maintains that a 2008 amendment to the Jones Act, which deleted the statute's venue provision, renders the Bermuda forum selection clause unlawful and contrary to public policy and, as such, Plaintiff's Jones Act claim is inarbitrable. [DE 8 at 10-12]. This argument has been expressly rejected by the Eleventh Circuit in *Lindo*, 652 F.3d at 1286-87. *See also Fernandes*, 2012 WL

2864491, at *2. Thus, for the reasons already articulated by the Court of Appeals, Plaintiff cannot prevail on this argument here.

### 2. Unconscionability Defense

Plaintiff also asserts that the arbitration clause in the Principal Terms of Employment is unenforceable under Article II of the Convention[10] as both procedurally and substantively unconscionable. Specifically, Plaintiff contends that the clause is procedurally unconscionable because of the unequal bargaining power of the parties and the absence of choice. [DE 8 at 6-7]. Plaintiff further maintains that the arbitration clause is substantively unconscionable because it forces him to waive his rights and remedies under the Jones Act and forecloses him from obtaining punitive damages. [*Id.* at 7-8].

In *Bautista*, 396 F.3d at 1302, the Eleventh Circuit limited the affirmative defenses available under Article II to fraud, mistake, duress, and waiver. *Bautista* also expressly foreclosed the "take it or leave it" unconscionability defense like the one asserted here by Plaintiff. *Id.*; *see also Henriquez*, 440 Fed. Appx. at 716 (finding that "[i]n Bautista, we refused to recognized unconscionability as a defense to enforcement of this kind of arbitration agreement"). Moreover, Plaintiff has not articulated the basis for his defense that the arbitration clause is procedurally unconscionable. He states only that the bargaining power is unequal because Carnival is a "giant" corporation and he is a poor Indian seaman. [DE 6-7]. However, if this assertion was sufficient for procedural unconscionability, many agreements between corporations and individuals would be subject to the defense and the application would clearly be overbroad. Additionally, Plaintiff has not explained the factual basis for his conclusory statement that he had no choice but to sign the arbitration agreement. Finally, the defense Plaintiff has categorized as

---

[10] Article II(3) of the Convention provides "The court of a Contracting State . . . shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative, or incapable of being performed." New York Convention, art. 11(3).

substantive unconscionability is really one and the same with Plaintiff's public policy defense, which Plaintiff acknowledges [DE 8-9]. As discussed above, this defense is inapt.

### III. CONCLUSION

For the reasons set forth above, the Court is vested with jurisdiction to consider whether the parties' agreement to arbitrate is enforceable. Having done so, the Court must compel the parties to arbitration because Plaintiff has not asserted or established a defense to arbitration recognized under the Convention. Additionally, because the Court will grant Defendant's Motion to Compel Arbitration, it must deny Plaintiff's Motion to Remand. Accordingly, upon review, it is

ORDERED THAT

(1) Defendant's Motion to Compel Arbitration [DE 3] is GRANTED.

(2) Plaintiff's Motion to Remand [DE 10] is DENIED.

(3) This case is CLOSED.

DONE AND ORDERED in Miami, Florida this 2nd day of October, 2012.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:  Honorable Andrea M. Simonton
     All Counsel of Record